IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IN RE:

| | | |
|---|---|---|
| MESEARCH MEDIA TECHNOLOGIES LIMITED, | : : | Case No. 24-21982-JCM |
| *Debtor,* | : : | Chapter 11 (Involuntary) |
| MESEARCH MEDIA TECHNOLOGIES LIMITED, | : : | Adversary No. 25-2049-JCM |
| *Plaintiff,* | : | Related to Doc. Nos. 4, 7 |
| v. | : | |
| CRIVELLA HOLDINGS LIMITED, CRIVELLA TECHNOLOGIES LIMITED, and ARTHUR R. CRIVELLA, | : : : : | |
| *Defendants.* | : | |

**<u>MEMORANDUM OPINION</u>**

On September 18, 2025, Crivella Holdings Limited, Crivella Technologies Limited, and Arthur R. Crivella ("Defendants") filed a ***Motion to Dismiss Amended Complaint for Declaratory Judgment and Preliminary and Permanent Injunctive Relief Pursuant to Rules 12(b)(1) and 12 (b)(6) of the Federal Rules of Civil Procedure and Rules 7012(b)(1) and 7012(b)(6) of the Federal Rules of Bankruptcy Procedure*** ("*Motion*") (Doc. 7)[1] in relation to the ***Amended Complaint*** ("*Complaint*") filed by Plaintiff on August 18, 2025 (Doc. 4). For the reasons set forth below, the Court will grant the *Motion* and dismiss the adversary proceeding.

**PLAINTIFF'S COMPLAINT**

Plaintiff's *Complaint* seeks seven Counts of relief all related to the parties' obligations under the Software License Agreement dated July 1, 2019 ("License") and the parties'

---

[1] Although the substance of the *Motion* is tailored to the circumstances of the *Complaint* filed in this adversary proceeding, the title of Defendants' *Motion* is identical to that filed in Case No. 25-2048 and therefore not entirely reflective of the relief sought in the *Complaint* in this case (this *Complaint* only seeks a declaratory judgment ancillary to a count for breach of contract and it does not seek an injunction).

1

Case 25-02049-JCM    Doc 13    Filed 10/22/25    Entered 10/22/25 12:07:00    Desc Main
Document    Page 2 of 12

duties relating to the License, particularly with regard to analyzing software known to the parties as the "Knowledge Kiosk." Counts I and II are both claims of fraudulent misrepresentation and constructive fraud against Defendants Arthur Crivella and Crivella Technologies, respectively, for intentionally making false statements and omissions regarding their work on the Knowledge Kiosk software and failing to bill for the "cost" of the actual work performed which Plaintiff states resulted in Plaintiff spending $2 million in initial investment capital and incurring an additional $3 million in debt. Count III is a claim for unjust enrichment against Defendants Arthur Crivella and Crivella Technologies for retaining the invoiced payments which Plaintiff alleges were inequitable or unjust under the circumstances.

Count IV of the *Complaint* is a claim for breach of contract against Defendant Crivella Technologies for submitting invoices to the Debtor and receiving payment for work that was allegedly not related to or of benefit to the debtor. Under Count IV, Plaintiff also seeks a declaration in accordance with 28 U.S.C. § 2201(a) of the calculation of the invoiced amounts that would have been proper and to clarify the legal relationship of the parties. Count V seeks an accounting of the amounts invoiced by Arthur Crivella and Crivella Technologies and further demands reimbursement for "any and all monies paid in excess for work that should have been completed 'at cost.'" *Complaint,* ¶ 125. Count VI is a claim for breach of contract against Crivella Holdings Limited for breaching the License by failing to provide the Plaintiff with all "Future Patent Related IP." Finally, Count VII is for breach of fiduciary duty against Defendant Arthur Crivella in his roles as former Chief Technology Officer and Chairperson of the Debtor's board of directors. It is alleged that he attempted to shut down Plaintiff's operations "unless Arthur Crivella's company received payment." *Complaint,* ¶ 140. Plaintiff alleges this breach of fiduciary duty by Mr. Crivella proximately caused no less than $5,000,000 in harm to the Debtor.

**MOTION TO DISMISS**

Defendant's *Motion* and accompanying **Brief in Support of Motion to Dismiss Amended Complaint for Declaratory Judgment and Preliminary and Permanent Injunctive Relief Pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure and Rules 7012(b)(1) and 7012(b)(6) of the Federal Rules of Bankruptcy Procedure** (Doc. 8) argue that the within adversary proceeding should be dismissed under Rule 12(b)(1) for a lack of subject matter jurisdiction stating the Plaintiff fails to allege in the *Complaint* that the claims constitute a core proceeding and that the *Complaint* fails to establish related to jurisdiction under 28 U.S.C. § 157. The *Motion* also asserts that Defendants are entitled to relief under Rule 12(b)(6) since the *Complaint* fails to state a claim upon which relief may be granted.

Defendants argue that the state law claims, along with the claim under the Declaratory Judgment Act, are not related to the underlying bankruptcy and that a determination of the parties' contractual rights under the License has no bearing on the bankruptcy estate since the estate has been fully administered.[2] Despite the *Complaint's* averment in paragraph 3 that this "is a core proceeding under 28 U.S.C. § 157(b)(2)" Defendants disagree and argue that it is not a core proceeding since it does not invoke a substantive right under Title 11 and is not a "proceeding that could only arise in the context of a bankruptcy case." *In re Exide Techs.,* 544 F.3d 196. 206 (3d Cir. 2008). Defendants further contend that the Plaintiff should be estopped from bringing all of these claims since the Debtor failed to list any of the claims as causes of the action in the Schedules as assets of the estate. Therefore, Defendants argue that the Debtor should not be allowed to "resurrect" these potential assets after Plan confirmation. Although Defendants note

---

[2] *See Notice of Occurrence of Effective Date* filed on May 30, 2025 (Doc. 371) which indicates May 30, 2025 was the effective date of the plan and that "Game Creek has paid all allowed claims and taken other such action necessary to substantial consummation of the Plan."

the causes of action were vaguely referenced in the *First Amended Disclosure Statement to Accompany Plan of Reorganization dated January 17, 2025* ("Disclosure Statement") (Doc. 176), the Disclosure Statement failed to describe the actions with particularity, their value, or the effect of such value on the estate or creditors.[3] Defendants argue that judicial estoppel should bar the claims in the *Complaint* because here the Plaintiff is the party that "resisted" full disclosure of the claims, and the Plaintiff is also the one that would benefit from failing to disclose. *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.,* 81 F.3d 355, 358 (3d Cir. 1996); *Krystal Cadillac-Oldsmobile GMC Truck, Inc.,* 337 F.3d 314, 323 (3d Cir. 2003).

Defendants cite to *In re Resorts Int'l., Inc.*, 372 F.3d 154, 166-67 (3d Cir. 2004) in support of their argument that post-confirmation subject matter jurisdiction is narrow, and the Plaintiff must establish a "close nexus" to the Chapter 11 plan in order to establish related to jurisdiction over the *Complaint*. Quoting *Resorts,* Defendants state the close nexus must affect the plan's "interpretation, implementation, consummation, execution, or administration." *Id.* at 167. Defendants allege that the *Complaint* does not require interpretation of the Plan, nor does Plan implementation depend on the requested interpretation of the License. Defendant points out that the source of funds for Plan administration were the proceeds generated from the sale of the Debtor's equity and Plan funding was not dependent on any proceeds generated as a result of the License.

Defendants argue that the *Complaint* fails to state a claim upon which relief can be granted thus it should be dismissed under Rule 12(b)(6) stating that the allegations in the *Complaint* do not state plausible claims for relief. Defendants argue that Arthur Crivella would be

---

[3] The Court believes Defendants are referring to Section VIII Paragraph 2 of the Disclosure Statement which generally describes the causes of action as set forth herein, namely that Crivella Technologies engaged in excessive billing practices and caused delays in software development and there is a general dispute regarding the scope of the License.

indemnified by MeSearch Media Technology Limited ("MeSearch") to the extent he is liable for any claims individually in his capacity as an officer/director and/or shareholder of MeSearch. Defendants argue that the *Complaint* fails to meet the heightened pleading standard for fraud and merely restates breach of contract claims as fraud claims. Defendants finally argue that the declaratory relief sought herein is duplicative to that sought by Plaintiff in Adversary No. 25-2048-JCM.[4]

## PLAINTIFF'S BRIEF OPPOSING DISMISSAL

*Plaintiff's Brief in Opposition to Defendants' Motion to Dismiss Amended Complaint for Declaratory Judgment and Preliminary and Permanent Injunctive Relief Pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure and Rules 7012(b)(1) and 7012(b)(6) of the Federal Rules of Bankruptcy Procedure* (Doc. 12) argues that the Court maintains jurisdiction over the proceeding based on the provisions retaining jurisdiction in the confirmed Plan. Plaintiff points to section 15.1(b) of the plan which states:

> **15.1   Retention of Jurisdiction**
>
> Notwithstanding entry of the Confirmation Order and the occurrence of the Effective Date, the Court shall retain exclusive jurisdiction of all matters arising out of or relating to the Chapter 11 Case, the Plan, the Confirmation Order, the Creditors' Royalties Escrow, and the Estate pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:
>
> …(b) To decide and resolve any and all motions, adversary proceedings, including Recovery Actions, applications, contested matters and any other matters, whether pending as of the Effective Date or brought thereafter in accordance with the terms hereof;

---

[4] Defendants appear to have inadvertently cited the within Adversary Case No. in their brief as opposed to the Plaintiff's declaratory judgment action at Adversary No. 25-2048-JCM which will similarly be dismissed for a lack of subject matter jurisdiction contemporaneously herewith.

The Plaintiff states it filed this adversary proceeding pursuant to Fed.R.Bank.P. 7001(a) in order to recover money that "rightfully belonged to the Debtor and now belongs to the Reorganized Debtor."[5] The Plaintiff cites to cases from other districts stating courts will find that jurisdiction exists if the confirmed plan provided for retention of jurisdiction. *In re Park Ave. Radiologists, P.C.,* 450 B.R. 461, 466 (Bankr. S.D.N.Y. 2011); *In re Ventilex USA, Inc.,* 509 B.R. 140, 143 (Bankr. S.D. Ohio 2014).

Plaintiff acknowledges that post-confirmation "related to" jurisdiction shrinks, and a Bankruptcy Court only retains jurisdiction over claims having a close nexus to the bankruptcy plan. Plaintiff maintains that "a 'close nexus' exists 'when a matter affects the interpretation, implementation, consummation, execution, or administration of a confirmed plan.'" *Resorts*, 372 F.3d at 167. Plaintiff alleges there is a close nexus in this case because the alleged conduct that gave rise to the claims in the *Complaint* occurred "before, during, and after the Debtor's bankruptcy case was filed." Plaintiff argues the License encompasses "purported work to build the Knowledge Kiosk, which Defendants have frustrated and interfered with prepetition and post-petition." Plaintiff states the causes of action in the *Complaint* "relate to the preservation of the Reorganized Debtor's claims, rights, and remedies."

As to Defendants' argument that the *Complaint* fails to state a claim under which relief can be granted under Rule 12(b)(6), Plaintiff argues that they have adequately pleaded all elements of each of the claims set forth in the *Complaint*. Plaintiff argues they should not be judicially estopped in bringing the claims since the general factual basis of the claims was identified in the Disclosure Statement.

---

[5] Rule 7001(a) allows an adversary proceeding to be filed for "a proceeding to recover money or property – except a proceeding to compel the deliver property to the trustee, a proceeding by an individual debtor to recover tangible personal property under § 542(a), or a proceeding under § 554(b), § 725, Rule 2017, or Rule 6002[.]"

## ANALYSIS

For the reasons set forth below, the Court ultimately agrees with Defendants' assertion that the bankruptcy court lacks jurisdiction to hear the *Complaint*. Therefore, the below analysis will focus on Defendants' Rule 12(b)(1) argument, and this Opinion will not reach the merits of whether Plaintiff's claims as set forth in the *Complaint* are well pleaded under Rule 12(b)(6).

### *Fed.R.Bankr.P. 7012(b)(1) Standard*

Federal Rule of Bankruptcy Procedure 7012(b)(1) makes Federal Rules of Civil Procedure 12(b)(1) applicable to bankruptcy adversary proceedings. Here, Defendants are presenting a facial challenge[6] to subject matter jurisdiction since Defendants argue that the face of the claims as alleged in the *Complaint* do not rise to the level of related to jurisdiction. Therefore, "the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Gould Elecs. Inc. v. United States,* 220 F.3d 169, 176 (3d Cir. 2000). It is the Plaintiff's burden to prove the existence of subject matter jurisdiction. *Id.* at 178.

### *Bankruptcy Court Jurisdiction*

For a Bankruptcy Court to exercise jurisdiction over a complaint in an adversary proceeding, it must have jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157. *In re IMMC Corp.,* 909 F.3d 589, 595 (3d Cir. 2018). Section 1334 confers upon District Courts original and exclusive jurisdiction of all cases under Title 11, and section 157(a) allows District Courts to refer matters "arising under title 11 or arising in or related to a case under title 11" to bankruptcy judges. *Id.*

---

[6] When challenging subject matter jurisdiction, a complaint can be attacked on its face or it can be attacked based on an extrinsic factual dispute. *See Mortensen v. First Fed. Sav. and Loan Ass'n,* 549 F.2d 884 (3d Cir. 1977).

This grant of jurisdiction to the Bankruptcy Court is further divided into "core" and "non-core" proceedings. *Id.*

### *"Core" Jurisdiction*

Core proceedings are those that "invoke a substantive right provided by title 11" or "that by [their] nature could arise only in the context of a bankruptcy case." *Id.* (quoting *Halper v. Halper,* 164 F.3d 830, 836 (3d Cir. 1999)). Section 157(b) includes a non-exhaustive list of core proceedings. Although the *Complaint* contains the blanket assertion in paragraph 2 that this is a core proceeding under 28 U.S.C. § 157(b)(2), it does not identify a specific subsection that may apply here. However, Plaintiff argued during the October 9, 2025 hearing that at the time the *Complaint* was filed, Plaintiff intended the *Complaint* to be a core proceeding under 28 U.S.C. § 157(b)(2)(C) as counterclaims brought by the estate against persons who filed claims against the Debtor's estate.

Plaintiff argued that when the *Complaint* was filed the Defendants had pending proofs of claims against the Debtor, and the *Complaint,* although filed as a separate cause of action, was intended as a basis for "set-off" against the claims filed by Crivella Holdings Limited and Arthur Crivella if the claims were adjudicated to be allowed. This Court finds this argument lacking.

First, the within adversary proceeding was filed on August 7, 2025,[7] and the Debtor's *Objection to Claim No. 2 and Request to Expunge* (objecting to the claim of Crivella Holdings Limited) (Doc. 195) and the Debtor's *Objection to Clam No. 3 and Request to Expunge* (objecting to the claim of Arthur Crivella) (Doc. 196) were filed on February 20, 2025. In each of

---

[7] The Court would also note that at the time the *Complaint* was filed, the Plan had gone effective, therefore the *Complaint* was not filed by the "estate" as contemplated under § 157(b)(2)(C) but rather by the Reorganized Debtor.

those objections, no counterclaims were raised, but the claims were merely contested substantively. To now assert that this adversary proceeding constitutes a counterclaim to either of those claims is without factual support.

Second, the *Objection to Claim No. 2 and Request to Expunge* was granted, and the claim was disallowed by Order entered on August 29, 2025 (Doc. 431). The Debtor withdrew its *Objection to Clam No. 3 and Request to Expunge* at the August 28, 2025 hearing (which was granted by Order issued on September 5, 2025 (Doc. 433)), so at the time of the argument on the *Motion*, there were no objections to claims pending. Notwithstanding the issue of whether this adversary proceeding actually is a counterclaim to the proof of claim,[8] now that the Court has issued a final Order disallowing the claim of Crivella Holdings Limited (Claim No. 2) and the Plaintiff has withdrawn its objection to claim of Aruthur Crivella (Claim No. 3), there are no claims to which a counterclaim may be asserted.[9] Therefore, since the relief sought in the *Complaint* cannot be considered a counterclaim to a proof of claim, the claims set forth in the *Complaint* cannot fall within a "core" proceeding under § 157(b)(2)(C).

### "Non-core"/"Related to" Jurisdiction

Since the Court finds that the *Complaint's* claims do not comprise a "core" proceeding, the analysis turns to whether the Court can exercise non-core jurisdiction according to § 157(c)(1) for cases that are "otherwise related to a case under title 11." *IMMC Corp.,* 909

---

[8] See *In re VP Energy, Inc.,* 300 B.R. 621 (Bankr. W.D. Pa. 2003)(In determining that the counts raised in an adversary proceeding constituted a core proceeding under § 157(b)(2)(C), the court considered whether the substance of the complaint arose from the same transaction or occurrence giving rise to the proof of claim, whether the filing of the proof of claim significantly predated the filing of the complaint or amended complaint, and whether each of the counts in the complaint constituted a counterclaims to the proof of claim.).

[9] *See In re New York City Shoes, Inc.,* 122 B.R. 668 (E.D. Pa. 1990) (Breach of contract claim was not considered a counterclaim to a proof of claim under § 157(b)(2)(C) where the proof of claim at issue was disallowed as part of a settlement agreement a year prior to the filing of the breach of contract proceeding).

F.3d at 595. If the Court were to hear the *Complaint* as a related to proceeding, this Court would "submit proposed findings of fact and conclusions of law to the district court." § 157(c)(1).

The general standard for related to jurisdiction was set forth by the Third Circuit in *Pacor,* where the court stated that the Bankruptcy Court has related to jurisdiction only if the "proceeding could conceivably have any effect on the estate being administered in bankruptcy" and if the proceeding could "alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and ***which in any way impacts upon the handling and administration of the bankruptcy estate***." *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984). (emphasis added).

The standard for related to jurisdiction set forth in *Pacor* was further narrowed in *Resorts,* when the Court considered how confirmation of a Chapter 11 plan restricted the scope of matters that could be considered related to the bankruptcy. *Resorts,* 372 F.3d at 164-65. The Third Circuit in *Resorts* reasoned that, post-confirmation, Bankruptcy Court jurisdiction must be limited to prevent the bankruptcy case from "extend[ing] indefinitely." *Id.* at 164 (quoting *Donaldson v. Bernstein,* 104 F.3d 547, 553 (3d Cir. 1997)). The Court in *Resorts* further articulated that once the plan has been confirmed, any claims brought must "affect an integral aspect of the bankruptcy process" and "there must be a close nexus to the bankruptcy plan or proceeding." *Id.* at 167.

The Court in *Resorts* stated that retention of jurisdiction provisions in a plan are only effective if there is already an underlying basis for Bankruptcy Court jurisdiction, stating "neither the bankruptcy court nor the parties can write their own jurisdictional ticket." *Id.* at 161 Subject matter jurisdiction cannot even be created by agreement in a plan of reorganization. *Id.* The Court in *Resorts* summarized, "If there is no jurisdiction under 28 U.S.C. § 1334 or 28 U.S.C. § 157, retention of jurisdiction provisions in a plan of reorganization or trust agreement are

fundamentally irrelevant." *Id.* Therefore, notwithstanding the language included in section 15.1(b) of the Plan that allows for the court retain jurisdiction over actions by the Debtor to recover property, the Court must consider whether a close nexus exists between the claims in the *Complaint* and the bankruptcy case.

Since the estate has been fully administered, all allowed claims have been satisfied in full, and there would only be a benefit to the Reorganized Debtor, there is no close nexus of the claims in the *Complaint* to the bankruptcy plan or estate. This is true because there is no recovery that would be "necessary to effectuate the terms of the plan." *Resorts*, 372 F.3d at 168. Any funds recovered as a result of these claims would only go to the Reorganized Debtor and not any creditor under the terms of the Plan. As pointed out by the Defendants, the Plan was fully funded by the equity infusion of Game Creek and, in accordance with the Notice of Occurrence of Effective Date (Doc. 371) and Post-Confirmation Status Report (Doc. 389), the effective date was May 30, 2025 and Game Creek has since paid all allowed claims. Therefore, the Court finds that any connection of the claims in the *Complaint* to implementation of the Plan is too attenuated to be considered a close nexus at this post-confirmation stage. The estate has been fully administered, and the outcome of this adversary proceeding could not conceivably have any effect on the administration of the bankruptcy estate. *See Id.* at 166.[10]

During the October 9, 2025 hearing, Plaintiff argued that *Resorts* was distinguishable from the present matter and pointed to the case of *In re Florida Dev. Assocs. Ltd.,* 2009 WL 393870 (Bankr. S.D. Fla. Feb. 4, 2009) for the proposition that traditional state law

---

[10] Courts from other jurisdictions agree with this approach. *See In re Gen. Media, Inc.,* 335 B.R. 66, 75 (Bankr. S.D.N.Y. 2005) ("The unsecured creditors have presumably been paid from the proceeds of the new loan and will receive nothing further. Bankruptcy courts plainly lack subject matter jurisdiction over post-confirmation litigation where the case has been fully administered and all of the recovery will go to the reorganized debtor rather than to the creditors. *See, e.g., Poplar Run Five Ltd. P'ship,* 192 B.R. at 858; *Venn v. Kinjite Motors, Inc.* (In re WMR Enters., Inc.), 163 B.R. 887, 890 (Bankr.N.D.Fla.1994)").

claims can have a close nexus to the bankruptcy case. The Court agrees with the reasoning in *Florida* as it is consistent with *Resorts* and it similarly relies on the Third Circuit *Pacor* test. *Florida,* 2009 WL 393870 at * 3. However, what the Plaintiff fails to acknowledge is in *Florida,* any recovery from the lawsuit against Knezevich & Associates would have replenished estate funds that the plaintiff in that case alleged were previously depleted by the defendant, and therefore recovery of the funds would be "for the benefit and administration of the bankruptcy estate." *Id.* In this case, any recovery or other relief requested would only benefit the Reorganized Debtor and not the bankruptcy estate.

## CONCLUSION

For the foregoing reasons, the Court lacks subject matter jurisdiction over the *Complaint.* Therefore, the *Motion* will be granted. The Court will issue an Order consistent with this Memorandum Opinion.

Dated: 10/22/2025

BY THE COURT:

John C. Melaragno, Judge
United States Bankruptcy Court

SIGNED
10/22/25 11:33 am
CLERK
U.S. BANKRUPTCY
COURT - WDPA